REUBEN ELLIOTT ET UX. *v.* MARYLAND NATIONAL
BANK, PERSONAL REPRESENTATIVE OF THE ESTATE
OF M. GLADYS IDDINGS

[No. 83, September Term, 1980.]

*Decided July 24, 1981.*

*Motion for reconsideration filed August 18, 1981; denied September 8, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Franklin S. Tyng,* with whom was *William O. Carr,* on the brief, for appellants.

*Daniel H. Honemann,* with whom were *Clapp, Somerville, Black & Honemann* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

The central question in this case concerns an application of Maryland Code (1974) § 5-207 of the Estates and Trusts Article which provides:

"(a) Filing petition to caveat. — Regardless of whether a petition for probate has been filed, *a verified petition to caveat a will may be filed at any time prior to the expiration of six months following the first appointment of a personal representative under a will,* even if there be a subsequent judicial probate or appointment of a personal representative. *If a different will is offered subsequently for probate, a petition to caveat the later offered will may be filed* at a time *within* the later to occur of

(1) *Three months after the later probate,* or

(2) Six months after the first appointment of a personal representative of a probated will.

(b) Effect of petition. — If the petition to caveat is filed before the filing of a petition for probate, or after administrative probate, it has the effect of a request for judicial probate. If filed after judicial probate the matter shall be reopened and a new proceeding held as if only administrative probate had previously been determined. In either case the provisions of Subtitle 4 of this title apply." (Emphasis added.)

More particularly, this case primarily involves the question whether, under the facts here, the time constraints set forth in § 5-207 (a) prohibited amendments to a timely-filed petition to caveat and, if so, whether the issues to be framed by an orphans' court and transmitted to a court of law pursuant to § 2-105 of the Estates and Trusts Article [1] were limited to those set forth in that petition.

---

1. § 2-105 provides in pertinent part:

"(a) Determination of an issue of fact. — In a controversy in the

On 14 June 1961, Mrs. M. Gladys Iddings (testatrix) executed a Last Will and Testament (first will). Item Fourth of the first will provided in pertinent part:

> "*FOURTH:* I give, devise and bequeath all of the rest, residue and remainder of my estate and property, real, personal and mixed, unto the Trustee under said Trust Agreement dated the *14th* day of *June*, 1961...." (Emphasis in original.)

On 1 October 1970, the testatrix executed a first codicil to the first will. The first codicil to the first will provided in pertinent part:

> "I, M. GLADYS IDDINGS, of Harford County, State of Maryland, do hereby make, publish and declare this to be the First Codicil to my Last Will and Testament, hereby amending Paragraph Four of my Last Will and Testament, dated June 14, 1961, as follows:
>
> I HEREBY DEVISE AND BEQUEATH *to Reuben Elliott* of Darlington, Maryland, *the 47 acre tract of land* lying on the north side of Price Road, and along Stafford Road, near Darlington, Maryland...." (Emphasis added.)

On 9 January 1973, the testatrix executed a Last Will and Testament (second will). Item Fourth of the second will provided in pertinent part:

---

[orphans'] court, an issue of fact may be determined by the [orphans'] court.

(b) Transfer of determination to law court. — At the request of an interested person made within the time determined by the [orphans'] court, the issue of fact may be determined by a court of law. When the request is made before the [orphans'] court had determined the issue of fact, the [orphans'] court shall transmit the issue to a court of law.

(c) Order based on determination. — After the determination of the issue, whether by the [orphans'] court or after transmission to a court of law, the [orphans'] court shall enter an appropriate judgment or decree."

## "ITEM FOURTH

I hereby devise and bequeath *to REUBEN ELLIOTT and his wife, NELLIE ELLIOTT* of Darlington, Maryland, . . . *the 47 acre tract of land* lying on the north side of Price Road, and along Stafford Road, near Darlington, Maryland. . . ." (Emphasis added.)

On 26 June 1976, the testatrix executed a first codicil to the second will. The provisions of that codicil are not relevant here.

On 21 November 1976, the testatrix executed a document captioned "Second Codicil" (Second Codicil). That document provided in pertinent part:

"I, M. GLADYS IDDINGS, of Harford County, State of Maryland, do declare this to be the *Second Codicil to my Last Will and Testament,* as follows:

I hereby strike all of Item Fourth *in my original Will,* in its entirety and in lieu thereof declare Item Fourth to be as follows:

I hereby devise and bequeath *to Reuben Elliott and his wife Nellie Elliott* of Darlington, Maryland *each the sum of One Thousand Dollars* ($1,000.00), provided that both of them survive me, or all to the survivor of them.

In all other respects, I confirm my said Will." (Emphasis added.)

On 6 August 1978, the testatrix died. On 11 August 1978, the appellee, Maryland National Bank, filed the first will, the first codicil to that will, the second will, the first codicil to that will, and the Second Codicil with the Register of Wills for Harford County.

On that day, in the Orphans' Court for Harford County (Orphans' Court), Maryland National Bank additionally filed a "Petition for Probate" of the second will, the first

codicil to that will, and the Second Codicil. Copies of these three documents appeared in the file of the case. Copies of the first will and its codicil did not appear in the file. However, a docket entry indicated that on 11 August 1978 Maryland National Bank had filed the first will and the first codicil to that will with the Register of Wills. Finally, on that day, an order was entered admitting the second will, the first codicil to that will, and the Second Codicil to administrative probate, and Maryland National Bank was appointed personal representative (personal representative).

By 1 September 1978, the appellants, Reuben and Nellie Elliott (caveators), received personal notice of the appointment of the personal representative and their right to present claims.[2] On 31 January 1979, the caveators filed a "Petition and Caveat" (Caveat) contesting the validity of the Second Codicil on the sole ground that that document "was not executed by [the testatrix] when she was of sound and disposing mind, and capable of executing a valid deed or contract." The caveators requested that the Second Codicil be "annulled and set aside." On 8 March 1979, the personal representative filed an answer denying the allegation that the testatrix was not of sound mind.

On 27 November 1979, more than a year after the appointment of the personal representative, the caveators filed an "Amended Petition and Caveat" (Amended Caveat) again contesting the validity of the Second Codicil. The caveators raised additional grounds for contesting the validity of the Second Codicil, including improper execution, lack of knowledge or understanding, fraud, and undue influence. The caveators requested that the Second Codicil be "annulled and set aside," that the Letters Testamentary granted to the personal representative be revoked, and that the "Court direct judicial probate, in accordance with the provisions of Estates and Trusts, § 5-207 of the Annotated Code of Maryland. . . ." On 13 December 1979, the personal representative answered the Amended Caveat, denied all of the

---

2. It should be noted that there is no allegation that the caveators are persons who would inherit from the testatrix by intestate succession.

allegations, and asserted that all of the issues raised for the first time in the Amended Caveat were "barred by limitations" set forth in § 5-207 (a).

On 14 March 1980, the personal representative filed a "Petition for Issues" which requested that the Orphans' Court frame and transmit to a court of law the single issue "was M. Gladys Iddings legally competent to make a Will on November 21, 1976?" On the same day, the caveators filed a "Petition for Issues" requesting the Orphans' Court to frame and transmit to a court of law all of the additional issues of fact raised in the Amended Caveat.

On 18 March 1980, a hearing was held in the Orphans' Court. At the hearing, the caveators filed a "Supplemental Petition for Issues" which raised additional issues of fact concerning the testatrix's intention in executing the Second Codicil and raised for the first time the issue "[d]oes the paper writing dated the 21st day of November, 1976, purporting to be a Second Codicil to the Last Will and Testament of M. Gladys Iddings, if the jury so find from the evidence, constitute a Codicil to the Last Will and Testament of M. Gladys Iddings, executed by her on January 9, 1973 [second will], or a Will executed by her on some other date?"

In a written opinion, dated 26 March 1980, the Orphans' Court determined that the amendments to the timely-filed Caveat were prohibited by the time constraints set forth in § 5-207 (a) and that, consequently, the issues to be framed and submitted to a court of law were limited to the sole question raised in the Caveat, namely whether the testatrix was competent to execute the Second Codicil.

On 26 March 1980, the Orphans' Court entered an order directing that the sole issue of the testatrix's competency to execute the Second Codicil be tried by a jury. The caveators appealed. We issued a writ of certiorari to the Court of Special Appeals before consideration by that court. We shall affirm.

The caveators offer a variety of arguments in support of their basic contention that the time constraints set forth in § 5-207 (a) are not applicable. Several of these arguments

are premised on the fact that until more than six months after the appointment of the personal representative the caveators were unaware of the existence of the first will and first codicil because the personal representative withheld that information from them. This fact is unsupported by the record.

Section 4-202 of the Estates and Trusts Article delineates the responsibilities of the custodian of a will upon the death of a testator. That section provides in pertinent part:

> "After the death of a testator, a person having custody of his will *shall deliver* the instrument to the register for the county in which administration should be had pursuant to § 5-103. The custodian *may inform* an interested person of the contents of the will." (Emphasis added.)[3]

The language of this section is plain and unambiguous. The only mandatory duty of a custodian of a will is to deliver it to the register of the appropriate county. There is no requirement that a custodian inform interested persons of the existence or contents of a will.

Here the record shows that at the time the Petition for Probate was filed, the personal representative also filed the first will and the first codicil to that will with the Register of Wills and that a docket entry indicated that those documents had been so filed. When the personal representative filed the first will and the first codicil to that will with the Register of Wills, the personal representative discharged all of its responsibilities under § 4-202. The personal rep-

---

**3.** There can be no question that the word "may" in § 4-202 is permissive and not mandatory. Art. 93, § 4-202, the predecessor to § 4-202 of the Estates and Trusts Article, provided in pertinent part:

"After the death of a testator, any person having custody of his will shall immediately deliver such instrument to the register for the county in which administration should be had pursuant to § 5-103. The custodian *may, if he desires,* also inform any interested parties of the contents of such will." (Emphasis added.)

The Revisor's Note to § 4-202 of the Estates and Trusts Article indicates that "the only changes are in language."

resentative had no further obligation to inform the caveators of the existence or contents of those documents.

On the other hand, the caveators had notice of the probate proceeding. They were obligated to exercise due diligence and to inform themselves as to what had occurred in that proceeding. *See Ventresca v. Weaver Bros.,* 266 Md. 398, 407, 292 A.2d 656, 661 (1972); *Baltimore Luggage Co. v. Ligon, III,* 208 Md. 406, 421-22, 118 A.2d 665, 673 (1955).

Here there was a docket entry that indicated that the first will and the first codicil to that will had been filed with the Register of Wills at the time the Petition for Probate was filed. Thus, information concerning the existence of the first will and the first codicil to that will was available to the caveators from the time they received notice of the proceeding. Consequently, they should have been aware of the existence of the first will and the first codicil to that will from the time that they received notice. Under these circumstances, the caveators' failure to become aware of the existence of the first will and the first codicil to that will was the caveators' responsibility, not the responsibility of the personal representative. Accordingly, all of the caveators' arguments that are premised on the fact that they were unaware of the existence of the first will and the first codicil to that will are without merit.

The caveators contend that the Orphans' Court erred when it submitted only the Second Codicil to judicial probate but refused to submit the second will and first codicil to that will to judicial probate. They argue that because a codicil is a part of a will and operates as a republication of the entire will, § 5-207 (b) requires judicial probate of the will as well as its codicils even if a caveat is filed to the codicil only. They conclude that under § 5-207 (b), the Caveat here constituted a request for judicial probate, not only of the Second Codicil, but also of the second will and its first codicil, and that judicial probate of all three documents was mandatory.

An interest in property is the very foundation of the right to caveat so that one attacking a will must have a property interest in the matter. *Yingling v. Smith,* 254 Md. 366, 368,

255 A.2d 64, 66 (1969); *Brewer v. Barrett,* 58 Md. 587, 593 (1882). Indeed, if a person's property interest arises solely because he is a taker under a will offered for probate, that person cannot attack the validity of that will although he may attack a codicil that divests him of his property interest under that will. Otherwise, such a caveator would be in the inconsistent position of attacking the validity of a will that provides the property interest in the estate necessary to caveat the divesting codicil. *Zinn v. Imperial Council,* 253 Md. 183, 188-89, 252 A.2d 76, 80 (1969).

Here at the time the caveators filed the Caveat to the Second Codicil, they concededly were unaware of the existence of the first will and its first codicil. Absent knowledge of the existence of the first will and its first codicil, the caveators manifestly understood that their property interest derived solely from Item Fourth of the second will which devised the 47 acre tract of land here in question to them. Moreover, at the time the caveators filed the Caveat they must also have understood that they had no standing to caveat both the second will which gave them their property interest and the divesting Second Codicil because they would then be in the inconsistent position of attacking the validity of the will that provided their property interest in the estate necessary to caveat the divesting Second Codicil. Accordingly, it is clear that at the time the caveators filed the Caveat to the Second Codicil, they intended to caveat only the divesting Second Codicil and not the second will.[4] Thus, the Caveat here did not constitute a request under § 5-207 (b) for judicial probate of the second will and its first codicil and, therefore, judicial probate of those two documents was not required.

The caveators further contend that the Orphans' Court erred in refusing to permit the Amended Caveat because it was not filed within six months of the appointment of the personal representative. The caveators point out that § 5-207 (a) (1) provides that "if a different will is offered

---

4. In view of this decision, we need not consider the caveators' contention that their standing to caveat the second will and its first codicil derived from their property interest under the first will and its first codicil.

subsequently for probate, *a petition to caveat the later offered will* may be filed . . . three months after the later probate." (Emphasis added.) They argue that because the Second Codicil refers to the original will, the Amended Caveat was timely filed under § 5-207 (a) (1). This contention is without merit.

Here, at the time the caveators filed the Amended Caveat to the Second Codicil, they concededly were unaware of the existence of the first will and its first codicil. Thus, at that time, they intended to caveat only the Second Codicil and not the first will and its first codicil. Because the Amended Caveat was a petition to caveat the Second Codicil only, it was not a petition to caveat a "later offered will." Thus, the provisions of § 5-207 (a) (1) do not apply.

The caveators offered only one significant contention not premised on the fact that they were unaware of the existence of the first will and the first codicil to that will.[5] The contention that "certain of the amended grounds for caveat, such as undue influence, are related to and possibly implied or inferred by the original grounds of the Caveat (lack of mental capacity), particularly in the light of subsequent developments" is without merit. Each of the grounds alleged in the Amended Caveat was either an allegation of a lack of testamentary capacity and, therefore, redundant, *Nugent v. Wright,* 277 Md. 614, 624, 356 A.2d 548, 554 (1976); *Sumwalt v. Sumwalt,* 52 Md. 338, 346-47 (1879), or was a distinct and separate issue from that set forth in the initial Caveat that could not be filed more than six months after the appointment of the personal representative. *Nugent,* 277 Md. at 625, 356 A.2d at 555; *Meyer v. Henderson,* 88 Md. 585, 592-93, 41 A. 1073 (1898).

Under all of the circumstances here, there is no reason why the time constraints set forth in § 5-207 (a) should not

---

5. The caveators' contention that the Orphans' Court erred in allowing the personal representative, acting as administrator, to continue to pay claims and make distribution of bequests and devises under the second will after the Caveat was filed is without merit. The record contains no evidence to show that the personal representative acting as administrator continued to pay claims and make distribution of bequests and devises after the Caveat was filed.

apply. That section prohibited the caveators from filing the Amended Caveat because it was not filed within six months after the appointment of the personal representative. Therefore, the issues to be framed by the Orphans' Court and transmitted to a court of law were limited to the sole issue raised by the Caveat, namely the competency of the testatrix. Accordingly, we shall affirm.

*Judgment affirmed.*
*Appellants to pay costs.*