581 A.2d 445

Gertrude **MARKERT**

v.

Peggy **BEATLEY**, Personal Representative of the Estate of Anne F. Carter.

No. 1943, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 2, 1990.

Patrick R. Hudson, Waldorf, for appellant.

George Andrews (Andrews, Schick, Bongar & Starkey, P.A., on brief), Waldorf, for appellee.

Argued before MOYLAN, GARRITY and GETTY (JAMES S., Retired, specially assigned), JJ.

JAMES S. GETTY, Judge.

This appeal arises from a decision of the Circuit Court for Charles County dismissing, without a hearing on the merits, a caveat proceeding for failure to file a timely objection to administrative probate as set forth in Estates & Trusts Article § 5–207, *i.e.*, within six months after the first appointment of a personal representative of a probated will.

The factual background giving rise to this controversy is reasonably ascertainable. The procedural trail of the case, however, is muddled by the propensity of the Orphans' Court for Charles County to issue, rescind, and reverse the

various orders presented to the court in the course of the proceedings. The chronology of events is as follows:

Anne F. Carter, the decedent, died in October of 1988, survived by a daughter, Gertrude Markert, appellant herein, who is a citizen and resident of Poppenhausen, Germany. Appellant speaks German and has no understanding of the English language. After attending her mother's funeral, Ms. Markert returned to Germany. What, if anything, she knew about the state of her mother's affairs is unclear.

Prior to her death, Mrs. Carter had been ill and employed Peggy Beatley, appellee herein, as a caretaker and personal assistant. This hiring allegedly took place within a year of Mrs. Carter's demise. Several days after Mrs. Carter's death, appellee filed for probate a document purporting to be the Last Will and Testament of Mrs. Carter. This instrument was dated March 24, 1988, and was admitted to probate on November 9, 1988.

Under the terms of the will, the appellee is named as the Personal Representative and Wilbur Tigor, who is not otherwise identified, is given a life estate in Mrs. Carter's property and the balance of the estate is devised and bequeathed to appellee.[1]

Pursuant to Estates & Trusts Article § 1–103(a), the Register of Wills mailed notice of the Petition for Probate to appellant on November 17, 1988. The notice required that any objections to probate be filed on or before May 9, 1989, in accordance with § 5–207 of the article. No return receipt card was ever returned by the postal authorities as proof of service. At some unspecified date in 1989, the Orphans' Court sent a tracer on the November 17, 1988, notice. Thereafter, on September 20, 1989, a form letter

---

1. In an amended caveat petition filed June 8, 1989, alleging fraud and undue influence, appellant alleges that in February, 1987, Mrs. Carter requested that appellee take her to the law firm of Mudd, Mudd & Fitzgerald where appellee learned that Mrs. Carter intended to leave her entire estate to her daughter subject to the life estate to Wilbur Tigor.

was received from the Postal Services Inquiries Office with a check mark indicating "The foreign administration reported that the article was delivered to the proper person." Appellant denies receiving any notice from the postal service concerning her mother.

Appellant's first effort to contest the validity of her mother's will arose as a result of an overseas telephone call from appellant to her present counsel on or about April 25th or 26th, 1989. Through an interpreter, appellant requested that counsel represent her interests. At the circuit court hearing, counsel stated that he could not comply with the notice requirement deadline of May 9th, because of the impossibility of preparing the caveat, mailing it to Germany and receiving it back in Charles County in the thirteen days remaining from the time he was retained. The mailing and delivery time, according to counsel, required ten days each way.

Counsel filed an unverified caveat based upon his own investigation and interviews with potential witnesses in Cecil County. That caveat was filed on May 5th, which is within the six months deadline. On May 9th, the Orphans' Court signed an order accepting the filing based upon a memorandum submitted by counsel for appellant explaining the reasons for his inability to file a verified petition, signed by appellant, within the May 9th deadline. On May 15, counsel filed a petition to caveat signed by appellant, but without the verification required by § 1–102 of the Estates & Trusts Article. A complete verification, duly signed by appellant, was filed on June 28, 1989.

Aggrieved by the actions of the Orphans' Court, appellee filed a "Motion to Set Aside Order Accepting Unverified Caveat Proceeding" on May 23, 1989, alleging that the Orphans' Court lacked jurisdiction to entertain a caveat petition beyond the six months provided for in the statute. Although appellee requested a hearing on the matter, the court, without notice to either party, signed an order the same day striking its order of May 9 and then set for hearing the order it had signed minutes before.

A hearing was held on June 20 consisting of argument of counsel on the unverified petition to caveat; the Orphans' Court took it under advisement. Thereafter, appellant amended her caveat petition and included a Petition for Issues to be forwarded to the circuit court for trial. On August 8th, the court signed an order transmitting the caveat and the issues to the circuit court for trial by jury. Appellant then paid the $85.00 costs. On August 22nd, appellee filed a Motion to Vacate the Order of August 8th, and the Orphans' Court, predictably, struck its earlier order the same day. Appellant ended the morass by appeal to the circuit court for a trial *de novo*.

The circuit court heard argument on the issue of whether the Orphans' Court had jurisdiction to extend the time for filing a verified caveat and, concluding that the court had no such authority, dismissed the caveat and remanded the case to the Orphans' Court. In pertinent part, the court said:

> I find as a fact that Mrs. Markert, the Caveatrix, as daughter of the decedent, is an interested person who was entitled to the notice contemplated by section 2–210 of the Article and I conclude that such a notice was sent to her in Germany, in the normal course of events. I further conclude that whether by means of the notice that was sent to her, whether she got it or not, that she did have actual notice of the probate proceeding at least as early as the end of April of 1989.
>
> .  .  .  .  .
>
> As I understand the law as the statute is construed by the Court of Special Appeals in 59 Md.[App.] 1 [474 A.2d 523] the *Durham* case, since she actually had notice she needed to have a verified caveat in by midnight, May 9th, and did not.

The trial court is correct that in *Durham v. Walters*, 59 Md.App. 1, 474 A.2d 523 (1984) (Garrity, J.), we held that the Orphans' Court was divested of its jurisdiction to consider a caveat filed more than six months after the appoint-

ment of the personal representative. We are in full accord with what was said in *Durham* where a caveat was sought to be filed eight months after the last date established by publication in the local newspaper for objecting to the probate of a will and several of the caveators, all of whom alleged lack of notice, resided in the county where the notice was published. The holding in *Durham*, however, is not necessarily dispositive of the present case.

Section 1-105 of the Estate and Trusts Article sets forth the purpose of Titles 1-12 as follows:

(a) Purpose; construction.—The purpose of the estates of decedents law is to simplify the administration of estates, to reduce the expenses of administration, to clarify the law governing estates of decedents, and to eliminate any provisions of prior law which are archaic, often meaningless under modern procedure and no longer useful. This article shall be liberally construed and applied to promote its underlying purpose.

Section 5-207(a) is not a statute of limitations. *Durham, supra.* In *Sole v. Darby*, 52 Md.App. 218, 447 A.2d 506 (1982), we held (Liss, J.) that a caveat filed six months after the date mandated by § 5-207(a) should be accepted where the notice received by the caveators was ambiguous. We said:

While we agree with the trial court that the six months period of limitation stated in § 5-207(a) is mandatory under normal circumstances, we do not agree that in a case such as the one at bar, the rigid adherence to its terms is mandated.

*Id.* at 224, 447 A.2d 506.

The Court of Appeals addressed the question of the applicability of limitations statutes in *Chandlee v. Shockley*, 219 Md. 493, 150 A.2d 438 (1959). The Court was confronted with a claim filed against the personal representative of an estate beyond the six month period after the qualification of the personal representative. The trial court held that the right of action was barred notwithstanding

that the claimant alleged that he had been induced not to file suit and that the claim would be settled. Speaking for the Court, Chief Judge Hammond stated:

In an ordinary statute of limitation, the remedy may be waived. On the other hand, most courts have held that if the statute creates a new cause of action with a time limit as a condition precedent, such a limit cannot be extended by waiver or estoppel.... Even where the distinction is recognized and the statute involved is substantive and creates the right rather than limits the remedy, the rule that the controlling period of time may not be tolled never has been held to be immutable under all circumstances.

Citing with approval *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253 (C.A. 4th Cir.1949), the Court of Appeals reversed the dismissal of the claim. In *Scarborough, supra,* the Fourth Circuit noted that case law supports the conclusion that "there is a chink in the supposedly impregnable armor of the substantive time limitations of the [Federal Employers Liability] Act.... Here the proper approach is not technical and conceptualistic. Rather, we think should it be realistic and humane. The spirit, not the letter, should control." *Id.* at 259. We think the same reasoning should be applied to the case *sub judice.*

Appellant alleged in her Amended Petition and Caveat, filed June 8, 1989, that the deceased, Anne F. Carter, could not read the English language and could not comprehend legal phrases, thus she depended upon others to interpret such language for her; that during 1987 the deceased's general health and mental state declined drastically causing her to become wholly dependent on the appellee for her daily care; that in February, 1987, the deceased requested appellee to take her to a named law office where appellee learned that the deceased intended to leave her entire estate to her daughter, subject to a life estate to one Wilbur Tigor; that in 1988, while the deceased was totally disoriented, appellee hired a lawyer to prepare another will and a power of attorney which appellee represented left a life estate to Wilbur Tigor, $20,000 to appellee, and the balance of the

estate to appellant; that appellee brought the documents to the house and insisted that Mrs. Carter sign them at a time when she was neither physically or mentally competent to do so and that the content of the will, as misrepresented, actually left the entire estate to appellee subject to the life estate to Wilbur Tigor; that appellee deliberately refused to advise the appellant of decedent's condition and the state of her affairs prior to her death.

By focusing only upon the jurisdiction of the Orphans' Court to extend the time for filing a caveat, the circuit court gave no consideration whatever to the allegations of the appellant alleging fraud and undue influence. Appellant's appeal was filed in accordance with Courts Article § 12–502(a), which provides for a *de novo* hearing. By its determination that the Orphans' Court could not extend the time for filing a caveat, the trial court denied appellant the opportunity to present evidence in support of her allegations of fraud and undue influence perpetrated, allegedly, by the appellee. Dismissal of the appellant's petition on the grounds of the pleadings alone, without an evidentiary hearing, is error. *Pellegrino v. Maloof,* 56 Md.App. 338, 467 A.2d 1046 (1983).

> Section 1–103(c) of the Estates Article provides that: If no return receipt is received apparently signed by the addressee, and there is no proof of actual notice, no action taken in a proceeding may prejudice the rights of the person entitled to notice unless proof is made by verified writing to the satisfaction of the court or register of wills that reasonable efforts to locate the addressee and warn him of the pendency of the action have been made.

The appellee herein was aware of the attempt by appellant to file a caveat and there is no evidence that appellee undertook any action to determine that actual notice had been received by the appellant and no effort was made by the appellee to contact appellant to determine whether she had received such notice and warn her of the pendency of the action.

The trial court construed the term "actual notice" to mean notice within the six months period irrespective of the method of receiving the same. This interpretation does not comport with the statutory requirements of giving notice and the term, furthermore, cannot be read in a vacuum. To be charged with actual notice, a party must have notice that can reasonably be acted upon within the limitations period. In this case, the actual notice received, based upon the uncontested facts of the case, did not allow appellant a reasonable opportunity to respond within the six months limitation period.

In summary, a petition, albeit, an unverified one, was filed timely and followed within several weeks by a verified petition. It would be a harsh and unjust result to preclude the deceased's only lawful heir from contesting the validity of her mother's will in light of the allegations set forth in the pleadings. The appellee claims no prejudice and has suffered none. The orderly administration of the estate is not materially disrupted by the admission of the caveat and the appellee ought not be permitted to use the statutory shield as a sword. For these reasons, we reverse the decision of the circuit court.[2] We need not address the remaining issue wherein the appellant alleges, alternatively, that she is entitled to relief under § 5–304(b) of the Estates Article authorizing judicial probate within 18 months of the decedent's death based upon fraud, material mistake, or substantial irregularity in the probate proceeding.

JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.

---

**2.** We do not suggest that the appellant is entitled to prevail in setting aside the will. We conclude, however, that under § 5–207 of the Estates Article she is entitled to an evidentiary hearing on the issues raised in her caveat.