885 A.2d 887

**Kimberly Ann BECK**

v.

**Richard H. BECK, Jr.**

**No. 2140, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Nov. 3, 2005.

preserved for appellate review. Sometimes it is hard, however, not to pile Ossa upon Pelion.

446

Elise Davis, on brief, Easton, for appellant.

Richard H. Beck, Jr., Millington, pro se.

Panel DAVIS, KENNEY, MEREDITH, JJ.

MEREDITH, J.

This appeal is from an award of child support that was less than the amount that would have been required by application of the child support guidelines, Maryland Code (1984, 2004 Repl.Vol.), Family Law Article ("F.L."), §§ 12–201 through 12–204. The Circuit Court for Kent County entered an order that required appellee, Richard H. Beck, Jr. ("the father"), to pay appellant, Kimberly Ann Beck ("the mother"), $700 per month in child support, rather than the guideline amount of $816.17 per month. The circuit court's explanation for the downward deviation from the guideline amount was: "[the father] has the half-sibling of [the Becks'] children he is raising and I think it's in [the Becks' children's] best interest that that child [*i.e.*, their half-sibling] should be supported in a reasonable manner."

The mother contends the circuit court erred in reducing the child support below the guideline amount solely on the basis of the presence in the father's household of the father's child from a previous relationship. We agree with her contention that F.L. § 12–202(a)(2)(iv) prohibits a departure based solely upon the presence of such a child in either parent's household, and that the finding made by the circuit court identified no other basis for the decreased amount. Accordingly, we hold that the reason given by the circuit court for the downward departure from the guideline amount is, as a matter of law, insufficient to justify the departure, and we shall remand the

case to the circuit court for further proceedings not inconsistent with this opinion.

## Background

The father and the mother were married on May 29, 1992. During the course of their marriage, two children were born. The father and the mother were granted a judgment of absolute divorce on April 18, 2001. At the time of the divorce, the mother was awarded legal custody and primary physical custody of the two children, and the circuit court ordered the father to pay child support of $608.45 per month.

In addition to the two marital children, the mother has a 13–year–old minor from a previous relationship living in her household, and the father has a 16–year–old minor from a previous relationship living in his household. The father has a fourth child, born after the divorce, for whom he is paying $300 per month in child support.[1]

On April 7, 2004, the father, acting *pro se,* filed a "Petition/Motion to Modify Child Support." The father asserted a number of reasons why his child support obligation should be reduced, none of which are at issue here. The mother answered the father's petition and filed her own motion to increase the father's child support obligation.

The circuit court referred the case to a master. After two hearings, the master recommended that the father's child support obligation remain unchanged because: (1) each party had a child from another relationship living with that party; and (2) the father was paying child support for his post-marriage child. The mother excepted to the master's findings. She argued that the child support obligation for the post-marriage child was not relevant, and she requested that

---

1. In this opinion we will refer to the children born to the father and the mother as the "marital children," to the children born to either the father or the mother from prior relations as "pre-existing children," and to the child born to the father after the marriage as the "post-marriage" child. For purposes of child support, it matters not whether the children were born within wedlock. *Middleton v. Middleton,* 329 Md. 627, 633, 620 A.2d 1363 (1993).

the father's child support obligation be increased and set at the guideline amount.

During a hearing on November 1, 2004, the circuit court found that the father's child support obligation for his post-marriage child was not relevant because the child support guidelines allow a deduction only for pre-existing child support obligations. The circuit court entered an order dated November 4, 2004, in which the court, after finding that the guideline amount was $816.17 per month, departed downward from the guideline amount and ordered the father to pay child support in the amount of $700 per month. The circuit court justified its downward departure from the guideline amount with a conclusory finding that it was "because of the presence in the [father's] house of an older half-sibling whom he supports [that it is] in the best interests of [the Becks' marital children] that the [father] be able to adequately support the older half-sibling."

### Analysis

F.L. § 12–202(a)(1) requires a court to use the child support guidelines "in any proceeding to establish or modify child support, whether pendente lite or permanent." As the Court of Appeals explained in *Petrini v. Petrini*, 336 Md. 453, 460, 648 A.2d 1016 (1994):

> The purpose of the guidelines was to limit the role of the trial courts in deciding the specific amount of child support to be awarded in different cases by limiting the necessity of factual findings that had been required under pre-guidelines case law. The legislature also intended the guidelines to remedy the unconscionably low levels of many child support awards when compared with the actual cost of raising children, to improve the consistency and equity of child support awards, and to increase the efficiency in the adjudication of child support awards. (Footnotes omitted.)

"There is a rebuttable presumption that the amount of child support which would result from the application of the guidelines ... is the correct amount of child support to be awarded," F.L. § 12–202(a)(2)(i), but that "presumption [of correct-

ness] may be rebutted by evidence that the application of the guidelines would be unjust or inappropriate in a particular case." F.L. § 12–202(a)(2)(ii); *Knott v. Knott,* 146 Md.App. 232, 251, 806 A.2d 768 (2002).

F.L. § 12–202(a)(2)(iii) sets forth a non-exhaustive list of factors that may be brought to the circuit court's attention by the parent seeking to rebut the presumption of correctness of the guidelines, and provides:

> (iii) In determining whether the application of the guidelines would be unjust or inappropriate in a particular case, the court may consider:
>
> 1. the terms of any existing separation or property settlement agreement or court order . . .; and
>
> 2. the presence in the household of either parent of other children to whom that parent owes a duty of support and the expenses for whom that parent is directly contributing.

Although the statute specifies that the circuit court may consider "the presence in the household of either parent of other children to whom that parent owes a duty of support," F.L. § 12–202(a)(2)(iii)(2), the child support statute was amended in 2000 to further specify that this factor may not provide the *sole* basis for rebutting the presumption that the child support guideline is correct. F.L. § 12–202(a)(2)(iv); *Gladis v. Gladisova,* 382 Md. 654, 673, 856 A.2d 703 (2004); *Lacy v. Arvin,* 140 Md.App. 412, 420, 431, 780 A.2d 1180 (2001).

The statute also provides that if "the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a . . . finding on the record stating the reasons for departing from the guidelines," F.L. § 12–202(a)(2)(v), including, among other points, a statement that explains "how the finding serves the best interests of the child." F.L. § 12–202(a)(2)(v)(C). *Gladis, supra,* 382 Md. at 664–65, 856 A.2d 703; *Wills v. Jones,* 340 Md. 480, 484, 667 A.2d 331 (1995); *Knott, supra,* 146 Md.App. at 256–57, 806 A.2d 768; *Lacy, supra,* 140 Md.App. at 420, 780

A.2d 1180; *Payne v. Payne,* 132 Md.App. 432, 442, 752 A.2d 1209 (2000); *Horsley v. Radisi,* 132 Md.App. 1, 24, 750 A.2d 692 (2000); *Allred v. Allred,* 130 Md.App. 13, 21 n. 4, 744 A.2d 70 (2000); *In re Joshua W.,* 94 Md.App. 486, 501, 617 A.2d 1154 (1993); *Tannehill v. Tannehill,* 88 Md.App. 4, 15, 591 A.2d 888 (1991). *See also Corby v. McCarthy,* 154 Md.App. 446, 497, 840 A.2d 188 (2003).

More specifically, F.L. § 12–202(a)(2)(v) provides:

(v) 1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines.

2. The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interests of the child; and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

As was stated in *Horsley, supra,* 132 Md.App. at 29, 750 A.2d 692, "[t]o justify a departure from the Guidelines, ... more than the loose use of labels is needed."

In short, a downward departure is justified only when the circuit court finds that the guideline amount is unjust or inappropriate in a particular case. F.L. § 12–202(a)(2)(ii). And even when the guideline amount is found by the circuit court to be unjust or inappropriate, the circuit court must also find, in writing or on the record, that the downward departure is in the best interests of the child receiving the child support. F.L. § 12–202(a)(2)(v)(C).

As noted at the outset, the circuit court's findings in the Becks' case relative to the downward departure from the guideline amount were sparse, consisting of a comment on the

record that "[the father] has the half-sibling of [the Becks'] children he is raising and I think it's in [the Becks' children's] best interest that that child [*i.e.,* their half-sibling] should be supported in a reasonable manner." This finding satisfies neither the requirement of F.L. § 12–202(a)(2)(iv) that there be a reason *other than* the presence of another child in the household, nor the requirement of F.L. § 12–202(a)(2)(v) that the departure serve the best interests of the child who is receiving the support. The similar finding that was incorporated into the written order of November 4, 2004, suffers from the same deficiencies.

In *Gladis v. Gladisova, supra,* 382 Md. at 673, 856 A.2d 703, the Court of Appeals rejected Mr. Gladis's claim that the child care expenses he was paying for a subsequent child warranted a reduction below the guideline amount for an earlier-born child. Rejecting Gladis's claim that the circuit court erred by not departing from the guidelines, the Court stated:

> Although, according to Section 12–202(a)(2)(iii)(2) of the Family Law Article, the expense of other children in the non-custodial parent's household is relevant to whether an award is "unjust" or "inappropriate," Section 12–202(a)(2)(iv) expressly states that evidence of this support obligation, by itself, cannot rebut the presumption that the award under the Guidelines is correct.

A similar statement appears in *Gladis,* 382 Md. at 664, 856 A.2d 703, where the Court quoted F.L. § 12–202(a)(2)(iii), and then stated: "The duty to support other children in the household of either parent, however, cannot form the sole basis for rebutting the presumption that the Guidelines establish the correct amount of child support. [F.L.] § 12–202(a)(2)(iv)."

Prior to the 2000 amendment that added § 12–202(a)(2)(iv) to the child support statutory scheme, in *Dunlap v. Fiorenza,* 128 Md.App. 357, 368, 738 A.2d 312, *cert. denied,* 357 Md. 191, 742 A.2d 520 (1999), this Court affirmed a circuit court award that had granted a non-custodial father a downward departure from the guideline amount of child support on the basis that

he had in his household two children from a subsequent relationship. Under the law then in effect, we held that the addition of two half-siblings in the non-custodial parent's household was a sufficient basis for the court to decrease the child support obligation. The circuit court judge in *Dunlap*, using language similar to that used by the circuit court judge in the case at bar, found that the downward departure benefitted the child receiving the support payment by ensuring that "his half-siblings do not have to do without (anymore than necessary)." *Id.* at 376, 738 A.2d 312.

In a dissenting opinion in *Dunlap*, Judge Hollander argued that the majority was in error when it accepted the circuit court's finding that the mere presence of children from a subsequent marriage was, standing alone, a legally sufficient reason for departing from the guidelines. *Id.* at 376–79, 738 A.2d 312. She wrote:

> I strongly disagree . . . with any suggestion in the majority opinion that the addition of half-siblings "is *per se* a significant part of the departure rationale."

> Clearly, the addition of half-siblings *may*, in the appropriate case, justify a downward departure from the child support guidelines. F.L. § 12–202(a)(2)(iii)(2). But, it is not an automatic entitlement. The presumptive correctness of the child support guidelines is mandated by statute. *See* F.L. 12–202(a)(2)(i). Mere proof that Mr. Fiorenza has two other young children, standing alone, is insufficient to rebut the presumption, and therefore does not warrant a downward departure from the guidelines under F.L. § 12–202(a)(2)(iii)(2). . . .

> Moreover, F.L. § 12–202(a)(2)(iv)(2)(C) expressly requires the court to make a finding as to how the determination to deviate downward from the guidelines "serves the best interests of the child." . . . The lower court's statement that "it would be in the best interest of Justin that his half-siblings not have to do without (anymore than necessary)" is, in my view, an inadequate explanation as to how the

downward departure from the guidelines serves Justin's best interests.

*　　*　　*

In sum, the father had the burden to rebut the presumption that the guidelines amount of support was correct. Merely having two other children is not enough to rebut the presumption.

The General Assembly quickly reacted to *Dunlap* by adopting Acts of 2000, Chapter 121, now codified as F.L. § 12–202(a)(2)(iv), which provides:

(iv) The presumption [of correctness] may not be rebutted solely on the basis of evidence of the presence in the household of either parent of other children to whom that parent owes a duty of support and the expenses for whom that parent is directly contributing.

When construing a statute, we normally look only to the language of the statute unless such language is unclear or ambiguous. While our goal in statutory interpretation is to "ascertain and effectuate the intention of the legislature," *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887 (1999)(*quoting Oaks v. Connors,* 339 Md. 24,35, 660 A.2d 423 (1995)), the "primary source [for discerning that legislative intent] is the statute itself." *Huffman v. State,* 356 Md. 622, 628, 741 A.2d 1088 (1999). When interpreting statutes, we must assign to words their "ordinary and common meaning," *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994), and "avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994).

In this case, there is no ambiguity in § 12–202(a)(2)(iv). The existence of children in the household of the parent paying child support, standing alone, cannot justify a departure from guideline amount. *See Gladis, supra,* 382 Md. at 664, 856 A.2d 703 ("The duty to support other children in the household of either parent ... cannot form the sole basis for

rebutting the presumption that the Guidelines establish the correct amount of child support.").

Our conclusion that F.L. § 12–202(a)(2)(iv) precludes a court from giving overriding weight to the presence of children described in F.L. § 12–202(a)(2)(iii)(2) is bolstered by the legislative history of F.L. § 12–202(a)(2)(iv). *See Adamson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 251–52, 753 A.2d 501 (2000)(we may consider legislative history to obtain a more complete understanding of the General Assembly's intent); *Wills v. Jones*, 340 Md. 480, 492, 667 A.2d 331 (1995). The legislative history of F.L. § 12–202(a)(2)(iv) refers expressly to Judge Hollander's dissent as the impetus for the amendment, which was introduced in the 2000 General Assembly as House Bill 396. The Floor Report on 2000 House Bill 396 from the Senate Judicial Proceedings Committee gave the following explanation of the measure:

This bill addresses a recent Court of Special Appeals decision, *Dunlap v. Fiorenza*, 128 Md.App. 357, 738 A.2d 312 (1999), in which the Court held that a departure from the guidelines was appropriate because the child's father had two subsequent children who lived in his household and to whom he owed a duty of support. In upholding the trial court's decision, the Court of Special Appeals stated "[t]he departure from the Guidelines was fully explained. The addition of two half-siblings on the father's side of the family is *per se* a significant part of the departure rationale."

In the concurring/dissenting opinion in the *Dunlap* case, Judge Hollander disagreed with the majority opinion that mere proof that a parent has additional children, standing alone, could justify a departure from the guidelines. Judge Hollander stated that a parent's additional children "may in the appropriate case, justify a downward departure from the child support guidelines. But it is not an automatic entitlement." Additionally, Judge Hollander noted that "if a downward deviation was appropriate in every case where there are subsequent children born to a party, the legislature would have provided for same in the same manner that

the guidelines allow a parent to deduct preexisting child support."

Judge Hollander also noted the requirement under the current law that the trial court make a finding as to how a deviation from the guidelines serves the best interests of the child. She found the trial court's statement that "it would be in the best interest of Justin that his half-siblings not have to do without (anymore than necessary)" an inadequate explanation as to how the downward departure from the guidelines serves the best interest of the child at issue. . . .

Judge Hollander disagreed with the majority's assertion that "the guidelines themselves take cognizance of the un-avoidable mathematical fact of life" that the presumptive support figure for one child "cannot stand undisturbed" when siblings are involved. Judge Hollander noted that the guidelines refer to multiple children in the same household, and obviously take into account the fact that there are certain economies of scale inherent in having more than one child in the home. For example, when a family has one child, the family needs a place to live, including a bedroom for the child. If the number of children in the family increases, the family may still make do in the same living space by having the children share the bedroom and bath-room. Other costs, such as utilities, are also largely fixed, regardless of whether there is one child or more than one in the home. Therefore, a downward deviation might not be appropriate and should not be automatic in every case in which subsequent children are born to one of the parties.

House Bill 396 reflects the concurring/dissenting opinion in the *Dunlap* case by providing that the presumption that the guidelines will yield a correct child support award may not be rebutted *solely* [italics in original] on the basis of the presence of additional children in the household of either parent to whom the parent owes a duty of support and the expenses for whom the parent is direct[ly] contributing.

Because F.L. § 12–202(a)(2)(iv) precludes departing from the guidelines solely because of the presence of another

child in the household of the non-custodial parent, it also precludes the court from granting a reduction, as the circuit court did in this case, solely to benefit a half-sibling living with the non-custodial parent. If the court's sole basis for reducing the support owed for the marital children under the guidelines is that it would be in the best interests of the marital children for their father to have more money available to spend on their half-sibling, that is an insufficient justification to satisfy the requirement of F.L. § 12–202(a)(2)(v)(C) that the departure from the guideline amount be in the best interests of the marital children.

There may be other circumstances, however, that justify a downward departure as being in the interests of a couple's children. *See, e.g., Walsh v. Walsh*, 333 Md. 492, 505, 635 A.2d 1340 (1994), in which the Court suggested that, if the non-custodial parent were paying the mortgage on the house occupied by the custodial parent, the combined burden of the mortgage payment and the full guideline amount might be unjust, such that it might be in the interests of the children to have the non-custodial parent pay the mortgage payment and a reduced level of child support in order to keep the house. For other hypothetical situations in which a downward departure might be in a child's best interests, *see Anderson v. Anderson*, 117 Md.App. 474, 486, 700 A.2d 844 (1997)("child's needs [are] met by the lower award and the lower award permit[s] the noncustodial parent to maintain a better household for extended visitation"), *judgment vacated*, 349 Md. 294, 708 A.2d 296 (1998); and *In re Joshua W, supra*, 94 Md.App. at 504, 617 A.2d 1154 (downward departure enables noncustodial parent of a child in foster care to "obtain the economic stability necessary to regain custody"). In this case, the circuit court made no finding that any such circumstances support a departure from the guidelines.

In deference to the circuit court's superior position to make such a factual finding, we remand the case for the circuit court to determine whether there are factors—other than improving the financial well-being of the marital children's half-sibling—that would cause a reduction in the child support payments for

the marital children to be in their best interests. In the absence of such a finding, the circuit court must revise its order and award child support for the marital children in the guideline amount.

CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; CHILD SUPPORT PROVISIONS TO REMAIN IN EFFECT IN ACCORDANCE WITH THE CIRCUIT COURT'S ORDER OF NOVEMBER 4, 2004, PENDING A FURTHER ORDER OF THAT COURT; APPELLEE TO PAY COSTS.